UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VIASYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV02076 ERW |
| ) | |
| EBM-PAPST ST. GEORGEN ) | |
| GMBH & CO. KG, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Viasystems, Inc.'s Motion for Leave to File First Amended Complaint [doc. #33] and Defendant ebm-papst St. Georgen GmbH & Co. KG's Motion to Dismiss for Lack of Personal Jurisdiction [doc. #9]. The Court heard arguments from the parties on the Motion to Dismiss at a hearing held on April 29, 2010.

**I.  MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Plaintiff Viasystems, Inc. ("Viasystems") asserts that it should be granted leave to file its First Amended Complaint, containing additional factual allegations and a newly-pled Count for tortious interference with contract and business expectancy, because it only clarifies the allegations in its original Complaint [doc. #1]. Viasystems also stipulates that the Motion to Dismiss should be considered as if it were filed in response to the First Amended Complaint. Having reviewed Viasystem's pleadings, the Court finds that its First Amended Complaint asserts no new jurisdictional bases, and that there is therefore no prejudice to Defendant ebm-papst St. Georgen GmbH & Co. KG ("EBM") in granting Viasystem's Motion and considering EBM's Motion to Dismiss in light of Viasystem's First Amended Complaint. To the extent Viasystems

has attempted to use the briefing of this Motion to present additional arguments in opposition to EBM's Motion to Dismiss, however, the Court declines to consider those arguments.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Background Facts[1]

Viasystems, a Delaware corporation with its principal place of business in St. Louis, Missouri, is in the business of manufacturing telecommunications ("telecom") equipment. In 2007, Viasystems entered into two contracts with third party Ericsson A.B. ("Ericsson") to manufacture for Ericsson certain telecom equipment identified as RBS 3518 base units ("the Units"). While Viasystems was designing the Units, Ericsson introduced it to EBM, a German company that manufactures various fans, pumps, and motors in Germany. Ericsson indicated to Viasystems that EBM is Ericsson's preferred fan manufacturer, and Viasystems proceeded to purchase the fans required for the Units from EBM. When the Units were completed, Viasystems delivered them to Ericsson, which utilized them with respect to several customers in Japan and possibly elsewhere.

Some time after Viasystems had delivered the Units, Ericsson's Japanese customers reported to Ericsson that the fans in some of the Units were failing. Instead of notifying Viasystems of the problem, Ericsson consulted with EBM, which admitted responsibility for the failures based on a manufacturing defect. Ericsson began replacing the defective fans, and it then notified Viasystems of a "systematic defect" in the Units and made demands on Viasystems for the costs associated with replacing the fans, reflected in three invoices it sent to Viasystems totaling approximately $5.6 million. In September 2009, Viasystems paid a demand from Ericsson for

---

[1] For purposes of Defendant's Motion to Dismiss, the facts alleged by Plaintiff in its First Amended Complaint are taken as true.

$1.5 million to attempt to mitigate damages caused by the defective fans. Ericsson continues to pursue recovery of the remainder of the invoiced amount from Viasystems, and it has advised Viasystems that it intends to file a demand for arbitration in Stockholm, Sweden if Viasystems fails to remit that amount in full. To date, Ericsson has not pursued any recovery related to the fans from EBM. Viasystems, however, contacted EBM and demanded that it assume responsibility for the sums Ericsson has demanded. The parties have held discussions related to this matter, and Viasystems has since received a total of $1,494,941 from EBM and its insurer, apparently in at least partial acknowledgment of EBM's responsibility for the defective fans. EBM has taken the position that that amount represents the maximum payment authorized by its insurer for this matter, and that it will not pay any additional amounts to Viasystems absent further authorization. Based on the problems with the Units or its inability to recover the costs of replacing the fans, Ericsson dramatically reduced its contracts with Viasystems for the Units, and it has also declined to do any business with Viasystems for printed circuit boards in 2010.

As a result of these events, Viasystems brings this suit against EBM, seeking to establish EBM's liability to Viasystems for the sums Ericsson has demanded from Viasystems and requesting, among other things, lost profits and damages for harm to its business relationship with Ericsson. Viasystems requests a declaratory judgment that EBM is liable to Viasystems by way of indemnity or contribution for all costs and losses stemming from the defective fans, and it also asserts claims for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, noncontractual indemnity, and tortious interference with contract and business expectancy.

## B. Legal Standard

"A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotations and citation omitted). Because the Missouri long-arm statute is construed as extending personal jurisdiction to the fullest extent permitted by the Fourteenth Amendment's Due Process Clause, *see J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. 2009) (en banc), the Court's jurisdictional inquiry is limited to determining whether asserting personal jurisdiction over the defendant comports with due process.

Where personal jurisdiction is controverted, the party asserting jurisdiction bears the burden of establishing a prima facie case that jurisdiction exists. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). Thus, "[t]o survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (internal citation omitted). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (internal quotations and citation omitted).

## C. Specific Jurisdiction

EBM contends that it is not subject to specific jurisdiction in Missouri for purposes of Viasystems's claims because the transaction at issue took place entirely outside of the United States. Viasystems argues that specific jurisdiction over EBM is warranted because EBM's

tortious conduct in refusing to assume liability for the damages claimed by Ericsson harmed Viasystems in Missouri and established the requisite Missouri contacts.

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Miller*, 528 F.3d at 1091 (internal citation omitted). In order for an exercise of specific jurisdiction to be consistent with due process, the defendant must have "fair warning" that its actions might make it subject to suit in the foreign jurisdiction, a requirement that is satisfied if (1) "the defendant has purposefully directed [its] activities at residents of the forum," and (2) "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal quotations and citations omitted).

In applying this standard, the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These contacts will be found lacking, however, where the defendant can only foresee that its conduct might cause injury in another forum; "the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotations and alterations omitted). In order to conclude that a party should, in fact, reasonably anticipate litigation in a given forum, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotations omitted).

Viasystem's arguments in favor of specific jurisdiction are unpersuasive, because even assuming that EBM has sufficient minimum contacts with Missouri to satisfy due process, the alleged injuries to Viasystems that provide the bases for its causes of actions did not "arise out of or relate to those" contacts. *See id.* at 472-73; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("When a controversy is related to or arises out of a defendant's contacts with the forum, . . . a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction.") (internal quotations and citations omitted). EBM's alleged Missouri contacts consist of (1) the network of distributors that sell EBM's products in Missouri; (2) the www.ebm-papst.com website, which connects Missouri customers with that distribution network; (3) its relationship with its North American affiliate or representative, ebm-papst, Inc. ("EPI"), which is registered to conduct business in Missouri and does conduct business in the state; (4) the harm suffered by Viasystems in Missouri as a result of EBM's tortious conduct; and (5) the communications between Viasystems and EBM with respect to Ericsson's claims against Viasystems, including EBM's payment to Viasystems, located in Missouri.

These alleged contacts fall into two main groups, neither of which supports an exercise of specific jurisdiction. First, there are those Missouri contacts that are entirely unrelated to Viasystems's claims against EBM: EBM's Missouri distributor network, its website, and its North American affiliate. Viasystems has not offered any argument as to how its causes of action arise out of these contacts, and none is apparent to the Court. Second, there are the alleged Missouri contacts that are, essentially, after-the-fact consequences of the failed fan transaction(s): the harm allegedly suffered by Viasystems in Missouri, and the communications and subsequent payment concerning the demands Ericsson made on Viasystems. Although Viasystems's claim for tortious

6

interference with contract and business expectancy may in some sense arise out of these alleged Missouri contacts, the Supreme Court made clear in *Burger King* that extra-territorial conduct with foreseeable effects in the forum state is insufficient, standing alone, to support a constitutional exercise of personal jurisdiction, because it lacks the necessary "purposeful availment" of the forum state's laws. 474 U.S. at 474. EBM conducted isolated discussions with Viasystems, none of which involved EBM representatives traveling to Missouri. EBM also made a payment of approximately $1.5 million to Viasystems, which is located in Missouri. These actions were insufficient to give EBM "fair warning" that it might be subject to suit in Missouri, because even if Viasystems's allegations are true, there was no "act by which [EBM] purposefully avail[ed] itself of the privilege of conducting activities" in Missouri. *Id.* at 475. EBM may have been aware that its conduct would have effects in Missouri, but that awareness alone could not put EBM on notice that it might be subject to suit in Missouri, and this is true even assuming the Court agrees with Viasystems that EBM's refusals to settle Ericsson's demands constituted independent tortious conduct.

In sum, then, the Court concludes that Viasystems's causes of actions against EBM do not give rise to specific jurisdiction over EBM in Missouri because the claims either do not arise out of EBM's alleged Missouri contacts or do not involve conduct constituting purposeful availment of the benefits of doing business in Missouri.

### D. General Jurisdiction

EBM argues that Viasystems cannot demonstrate that it has sufficient Missouri contacts to support an exercise of general jurisdiction because it conducts no business in the United States, let alone in Missouri. Viasystems claims that EBM is subject to the general jurisdiction of Missouri courts based on its website, the network of distributors of its products in Missouri, and the

activities of EPI, its North American affiliate, which is registered to do business in Missouri and does conduct business in the state.

Due process is "satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Under this standard, a defendant is subject to general jurisdiction in the forum if it "has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). The plaintiff, in order to make a prima facie showing of general jurisdiction, must demonstrate "that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (citing *Keeton*, 465 U.S. at 774). In evaluating the sufficiency of a defendant's forum-state contacts for general jurisdiction purposes, two principal factors are relevant: (1) the nature and quality of contacts and (2) the quantity or amount of contacts. *See id.* Two additional, secondary factors are relevant to ensuring that the exercise of jurisdiction comports with due process: the forum state's interest in providing a forum for its resident plaintiff and the convenience of the parties. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102-03 (8th Cir. 1996); *see also Land-O-Nod Co. v. Bassett Furniture Indus, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (explaining that these factors are "of secondary importance" and are "not determinative").[2]

---

[2] The Eighth Circuit employs the same factor test when evaluating the sufficiency of a defendant's contacts for purposes of specific jurisdiction, with the additional factor of "the relation of the cause of action to the contacts." *Steinbuch*, 518 F.3d at 586. Because that one factor was dispositive in the specific jurisdiction analysis, the Court declined to consider the remaining factors.

8

### 1. Missouri Contacts through EBM's Website[3]

The Eighth Circuit has directed courts to apply the *Zippo* "sliding scale" framework in considering the nature and quality of website contacts. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124-25 (W.D. Pa. 1997). The *Zippo* court explained the analysis as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions. A passive [website] that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive [websites] where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website].

*Zippo*, 952 F. Supp. at 1124. In addition to applying the *Zippo* framework to evaluate the nature and quality of a defendant's forum contacts, courts must also consider the quantity of a defendant's website contacts. *Lakin*, 348 F.3d at 712 ("Under the *Zippo* test, it is possible for a [website] to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not *substantial*.") (emphasis in original).

The level of interactivity offered by the www.ebm-papst.com website places it at the passive end of the *Zippo* scale. The materials submitted by the parties indicate that the website offers an array of information about EBM's products and about how customers in different countries, or regions within countries, can go about locating distributors. What it does not do,

---

[3] EBM's parent company is actually the owner of the www.ebm-papst.com website, but the Court does not believe that this is particularly relevant to the general jurisdiction inquiry if the website does, in fact, enable EBM to conduct business with Missouri residents.

however, is directly facilitate any commerce; there is no means for a Missouri customer to use the website to enter into a transaction with EBM or any of its affiliates. Instead, the website directs customers from the United States to the website of EPI – ebm-papst, Inc., EBM's United States affiliate – from which customers can then search for specific products and locate local retailers.[4] The website also does not differentiate between U.S. customers in directing all of them to EPI's website and e-mail address; Viasystems has not presented any material from the website targeted specifically at residents of Missouri or any other state. In short, the website is almost entirely informational, and as the *Zippo* framework suggests, maintaining a website that does no more than provide general information or a means for contacting a company does not demonstrate the level of business activity necessary to support general jurisdiction. *See, e.g.*, *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *VGM Fin. Servs. v. Singh*, 2010 WL 1731648, at *13 (N.D. Iowa 2010) (website providing a list of affiliated doctors in Iowa insufficient to support general jurisdiction in Iowa); *Parks v. Nova Guides, Inc.*, 2005 WL 2647965, at *3 (E.D. Mo. 2005) (no general jurisdiction in Missouri over company with website providing toll-free number for transactions and allowing customers to submit their own information so that the company can contact them).

    The nature of EBM's website contacts with Missouri makes their quantity largely irrelevant. Regardless of the number of Missouri residents accessing EBM's website, their use of the website does not represent substantial business activity in Missouri because the website does

---

[4] As EBM notes, customers are also unable to enter into transactions with EPI by using EPI's website.

not actually facilitate any commerce between EBM and Missouri residents. Any purchase of an EBM product by a Missouri resident that begins with the EBM website is at least three steps removed from EBM itself, as an internet user must progress from the EBM website, to the EPI website, and then to a local or regional distributor of EBM products. Thus, if and when a transaction ultimately takes place, it is between the Missouri resident and the local distributor; as discussed more fully below, EBM relinquishes all ownership of and control over its products when it delivers them to EPI for sale in the United States. As such, the Court finds that any Missouri contacts EBM has through its website are far too attenuated to support general jurisdiction, irrespective of the number of Missouri residents who might access the website.

The Court therefore concludes that EBM is not carrying out "systematic or continuous" business in Missouri through its website because the website (1) does not allow Missouri customers to enter into transactions with EBM, (2) does not contain any information targeted specifically at potential Missouri customers, as differentiated from potential U.S. customers generally, and (3) directs those potential Missouri customers who do wish to purchase EBM products to EBM's United States affiliate, which in turn directs them to local distributors.

### 2. Missouri Contacts through the EBM-EPI Relationship
### and the Network of Distributors of ebm-papst Products

Viasystems takes the position that EPI is, in effect, EBM's alter ego for purposes of conducting business in the United States; thus, EBM must be subject to general jurisdiction in Missouri because EPI is registered to do business in Missouri and conducts business in the state. Viasystems further claims that EPI acts as EBM's agent, and that EBM consented to Missouri jurisdiction when EPI accepted service of process in this litigation. EBM contends that it has no

ownership interest in or authority over EPI, and that EPI could not, and did not, consent to personal jurisdiction in Missouri on EBM's behalf.

The record refutes Viasystems's assertion that EPI should be regarded as EBM's alter ego; in fact, the organization of the related ebm-papst entities evinces an obvious intent to compartmentalize their operations and separate their ownership. *Cf. Steinbuch*, 518 F.3d at 580 (in determining whether personal jurisdiction exists over parent company, it is irrelevant whether wholly-owned subsidiary is subject to personal jurisdiction in the forum, absent evidence that the parent "dominates and controls the subsidiary") (internal citation omitted). EBM is one of three ebm-papst manufacturers entities in Germany; in addition, there are ebm-papst Landshut GmbH ("Landshut") and ebm-papst Mulfingen GmbH & Co. KG ("Mulfingen"). EBM, Landshut, and Mulfingen each has its own managing directors, officers, facilities, and employees. EBM is wholly owned by Mulfingen and one of Mulfingen's subsidiaries, making Mulfingen EBM's parent company.[5]

Unraveling the connection between the ownership of EBM and EPI requires several additional steps. Mulfingen and EBM own 72% and 28%, respectively, of ebm Beteiligungs-GmbH ("ebm Beteiligungs"), and ebm Beteiligungs is the sole owner of ebm-Industries Management Group, Inc. ("ebm-Industries"). ebm-Industries, in turn, is the sole owner of EPI. Thus, contrary to Viasystems's initial claims, EBM does not exercise control over EPI as its parent; the relationship between the two is limited to EBM's ownership of a minority interest in ebm Beteiligungs, the sole owner of EPI's parent company, ebm-Industries. Furthermore, Mulfingen is both EBM's parent and the holder of the controlling interest in ebm Beteiligungs,

---

[5] Mulfingen, and not EBM, is the owner and administrator of the www.ebm-papst.com website.

12

and as such, if there is indeed a single entity that "dominates and controls" the ebm-papst network of entities, it would appear to be Mulfingen, and not EBM.

In addition to EBM's lack of any direct ownership interest in EPI, there is also no indication that EBM has any other basis for meaningful participation in EPI's management. EBM and EPI do not share any directors or officers, and there are no agreements in place between the entities concerning management or control. As such, EBM represents that it does not have any authority whatsoever to give instructions to EPI's directors or officers concerning the operation of the corporation; EBM simply sells its products to EPI for re-sale in the United States, and it does not retain any ownership interest in those products or any control over how those products are marketed or to whom they are sold. EBM further states that it had no role in causing the formation of EPI, presumably because Mulfingen, as the parent entity, was responsible for structuring the ebm-papst entities. Viasystems has not presented any evidence tending to refute these specific facts, and it has not otherwise indicated that EBM has misrepresented any jurisdictional facts presented in its Motion. The Court therefore finds no basis for concluding that EPI is EBM's alter ego, and to the extent Viasystems claims that EPI acted as EBM's agent for purposes of accepting service of process or otherwise, Viasystems has likewise failed to meet its burden of establishing an agency relationship. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) ("Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, a party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.") (internal alterations, quotations, and citation omitted).

Nevertheless, Viasystems appears to suggest that it would be unfair to allow ebm-papst to structure itself in a manner that allows it to place its products into the U.S. stream of commerce

through EPI, with the knowledge that the products will ultimately be sold in markets across the United States, including Missouri, without being subject to personal jurisdiction in those markets. The only parties for whom this could possibly be "unfair," however, are those, like Viasystems, that seek to bring suits against EBM in the United States related to transactions or other dealings with EBM that take place entirely outside of the United States and do not involve products sold in the United States. If, for example, this litigation involved an injury or other harm caused by a product manufactured and sold by EBM to EPI, and then resold by EPI to a party in Missouri, it is conceivable that the Court could find specific jurisdiction over EBM in Missouri under a "stream of commerce" theory. *See Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) ("[W]hen a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has purposefully reaped the benefits of the law of each State in that trade area for due process purposes.") (internal alterations, quotations, and citation omitted). Furthermore, even if specific jurisdiction over EBM were unavailable in those circumstances, the putative plaintiff would not be left without recourse, as he or she could still bring an action against EPI, which would likely be subject to both specific and general jurisdiction in Missouri. In short, the ebm-papst network of entities has structured itself so that EPI is responsible for carrying out all business activities in the United States, and even if the intent behind the structuring was to avoid the jurisdiction of foreign courts over the German manufacturers, it remains the case that EBM lacks the requisite minimum contacts to support a constitutional exercise of personal jurisdiction in Missouri.

Having concluded that EPI's business activities in Missouri cannot be imputed to EBM, the alleged network of Missouri distributors of EBM's products likewise cannot support an

exercise of general jurisdiction over EBM in Missouri. As with the EBM-EPI relationship, there is no evidence before the Court that EBM has any authority or control over retailers of its products in Missouri, or that there is any other basis for finding that the distributors are EBM's alter egos for jurisdictional purposes. Thus, to conclude that there is general jurisdiction in Missouri over EBM as a result of the distributor network would require the Court to base that jurisdiction on EBM placing its products in the stream of commerce, with the knowledge that those products will ultimately end up in Missouri. *See id.* The "stream of commerce" theory, however, is largely inapplicable in the general jurisdiction context because it does not address whether the defendant's forum activities are continuous and systematic. *See, e.g.*, *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 106 (3d Cir. 2009) ("If we held [that a stream-of-commerce analysis could support jurisdiction even when the product at issue did not go through the 'stream'], we impermissibly would remove the 'arising from or related to' requirement from the specific jurisdiction test and unjustifiably would treat the stream-of-commerce theory as a source of general jurisdiction.") (internal citations omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788-89 (7th Cir. 2003) ("[The plaintiff's] reliance on the stream of commerce theory is misplaced because that theory is relevant only to the exercise of specific jurisdiction; it provides no basis for exercising general jurisdiction over a nonresident defendant.") (internal citation omitted).

As such, the Court concludes that EPI is not EBM's alter ego for general jurisdiction purposes or EBM's agent for purposes of accepting service of process, because the materials submitted by the parties demonstrate that EBM and EPI are wholly distinct entities, and that EBM's relationship to EPI is limited to a non-controlling interest in an entity which is the sole owner of EPI's parent company. Having rejected the premise that EPI's business activities in

15

Missouri should be imputed to EBM, neither the EBM-EPI relationship nor the network of distributors of EBM's products in Missouri provide any basis for exercising general jurisdiction over EBM in Missouri. Although EBM's products may ultimately be sold in Missouri, EBM relinquishes all authority and control over those products once they are sold to EPI – which in turn sells them to local retailers in Missouri – and EBM's Missouri contacts are therefore too "attenuated" to support an exercise of general jurisdiction in Missouri.

### E.     Conclusion

EBM has presented evidence indicating that it lacks the requisite Missouri contacts to be subject to personal jurisdiction in Missouri, and Viasystems has failed to carry its burden of demonstrating otherwise. There is no specific jurisdiction over EBM in Missouri because Viasystems's causes of action are for the most part unrelated to EBM's alleged Missouri contacts, and those that are arguably related lack any purposeful availment on the part of EBM of the benefits or privileges of conducting business in Missouri. EBM is likewise not subject to the general jurisdiction of Missouri courts because its alleged Missouri contacts – its largely passive and informational website, its relationship with its United States affiliate EPI, which does conduct business in Missouri, and the network of distributors of its products in Missouri – are too attenuated to constitute continuous and systematic business activity in the state.

For these same reasons, the Court also finds that jurisdictional discovery is unwarranted. This is not a case in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed. *See, e.g.*, *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003) (district court abused discretion in denying jurisdictional discovery where there was a lack of evidence concerning the quantity of the defendant's forum contacts). As discussed above, EBM has specifically refuted certain of Viasystems's jurisdictional allegations by presenting evidence in

16

the form of affidavits and other documents, and the remaining allegations do not support an exercise of specific or general jurisdiction over EBM even if they are true. The Court therefore sees no reason for permitting jurisdictional discovery to go forward, and Viasystems's request will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Viasystems's Motion for Leave to File First Amended Complaint [doc. #33] is **GRANTED**. The Court therefore considers EBM's Motion to Dismiss as if it were filed in response to Viasystems's First Amended Complaint.

**IT IS FURTHER ORDERED** that EBM's Motion to Dismiss for Lack of Personal Jurisdiction [doc. #9] is **GRANTED**.

Dated this 11th Day of June, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE